## CALL v. THE ADDIE SCHLAEFER.

*(District Court, D. New Jersey. January 7, 1889.)*

COLLISION—BETWEEN VESSELS AT WHARF.
　　The schooner S. was towed to a wharf, and berthed on the outside and within two or three feet of the canal-boat C., which was unloading at the wharf. The S. was warned by the C. to keep off, or both would go aground at low water, and the C. be injured; but the S. remained where she was, although she could easily have gotten away by employing a tug, if not by her own efforts. When the tide fell, the C. grounded, and collided with the S., receiving some injury,

but finally getting away. On returning to her position, it was found that the S. had got several feet closer to the wharf, in consequence of which, at the next low tide, the vessels again collided, the C. receiving further injury. The S. could easily have moved off at high tide before the second collision. *Held,* that she was liable for the damages caused by both collisions.

In Admiralty. Libel for collision.
*Carpenter & Mosher,* for libelant.
*Bedle, Muirheid & McGee,* for claimants.

WALES, J. This is a suit brought to recover damages sustained by the canal-boat Ellen Call in colliding with the schooner Addie Schlaefer, while both vessels were lying in the Morris canal-basin, Jersey City, on the nights of the 8th and 10th of November, 1884. The canal-boat had been moored to a wharf on the south side of the basin for several days prior to the collision, discharging gas-pipe. About midday on Saturday, the 8th, the schooner, loaded with pine wood, was towed in by a tug, and berthed on the outside and within two or three feet of the Call, so that persons could easily step from one vessel to the other. Both vessels laid side by side, with their bows to the westward. The tug had no sooner cast loose, than those on board the Schlaefer were warned by the men on the Call to keep off; because, if she remained where she was, both vessels would go aground at low water, and the canal-boat would be injured by the schooner; but the mate, who was in charge of the schooner, paid no attention to the warning. The tide was then at flood. Shortly after this, one of the hands on the Call went on board the Schlaefer, and requested the latter to breast off, so that the Call could have room to shift and continue her unloading; but this request was also unheeded. These occurrences took place during the absence of the captains of the respective boats. When the tide fell, the Call grounded, and the bottom of the basin being composed of soft mud, and sloping from the wharf, she slid down against the schooner, her rail being caught under the ends of the pine wood which projected over the side of the latter. There is some dispute as to whether the Call listed against the Schlaefer, or the Schlaefer listed against the Call; but this matters little, since it is certain that the vessels were jammed together, and that on the rise of the tide, the bow of the Call was kept down by the projecting deck-load of the schooner, while her stern was afloat, thus straining and twisting the Call, and doing other damage. By cutting off the ends of the wood, the Call was released, and hauled out and lower down the basin, and was not brought back to the wharf until Monday, the 10th. In the mean time she had been turned end for end, so that her after-hatch could be unloaded by the derrick, and it was then discovered that she could not take exactly her former position between the wharf and the schooner, owing to the closer proximity of the latter. The work of unloading was continued on Monday, and, at the fall of the tide again on that day, the vessels once more came together, and the schooner's anchor ripped or stove in some planks of the Call's cabin. The schooner floated at high tide on Monday, and could easily have moved off, but persisted in hold-

ing on where she was. The claimants allege that the tug had left the schooner aground, and that those on board were ignorant of the nature of the bottom of the basin, which was uneven next to the wharf, and sloped rapidly away; that the schooner was unable to move, and, being consigned to the same wharf, had a right to stay where she was left by the tug, in order to secure the place of the Call when the latter had finished unloading; that, on the other hand, the canal-boat could readily have hauled out from the wharf before low water, and should have done so both on Saturday and Monday nights, and so escaped the damages, which were the result of her own negligence.

The testimony shows that the Schlaefer was in fault from the beginning. The Call was entitled by precedence to maintain her position at the wharf until she had finished discharging her cargo. She had been unloading for several days before the schooner came in, and had grounded at low water without suffering any injury. The Schlaefer had received timely warning to keep off, and it was her duty to have done so; but she obstinately refused to move. The excuse that she was aground, and could not change her position, is refuted by the fact that she did move a few feet on Monday, and could have gone further away had her captain been so disposed. At all events, a small outlay for the services of a tug would have put her in a place where she could do no harm to the Call. Under the customary rule of "First come, first served," the Call had possession of the wharf, and was entitled to reasonable room to work in without interference by the Schlaefer, which had timely notice to keep out of the way when the tide fell. The mud at the bottom of the basin was very soft, and would not have opposed much resistance to the moving of the schooner to a point lower down, or nearer the north side of the basin, and thus have left sufficient room for the Call. The testimony of the mate of the Schlaefer, that he received no notice to move off before it was too late for him to do so, is in direct contradiction of the libelant's witnesses. His examination was not taken until more than two years after the collision, and the lapse of time may have more or less impaired his recollection of the facts. The libelant's witnesses spoke of what was fresh in their memories, and had no motive for misrepresentation. It was the duty of the Schlaefer to take every precaution to avoid interference with, or doing injury to, the Call, especially after receiving the cautionary notices of danger. On these facts there can be no doubt of the law of the case, or that the collisions were caused by the fault of those having charge of the schooner. *The Lake,* 2 Wall. Jr. 52. There will be a decree for the libelant, with an order of reference to ascertain the damages.